**SEVERSON v. HANFORD TRI–STATE AIRLINES, Inc., et al.**

No. 11406.

Circuit Court of Appeals, Eighth Circuit.

July 19, 1939.

*Rehearing Denied Oct. 18, 1939.*

S. W. Jensch, of St. Paul, Minn. (A. B. Christofferson, of St. Paul, Minn., on the brief), for appellant.

Pierce Butler, Jr., of St. Paul, Minn. (Richard J. Leonard and Doherty, Rumble, Butler, Sullivan & Mitchell, all of St. Paul, Minn., on the brief), for appellees.

Before GARDNER, SANBORN, and WOODROUGH, Circuit Judges.

GARDNER, Circuit Judge.

This is an appeal from a judgment dismissing plaintiff's cause of action entered upon a verdict directed in favor of defendants on trial of the action. The action was brought by appellant as plaintiff, to recover damages for personal injuries alleged to have been sustained by him in the course of his employment through the negligence of his employer. The verdict was directed upon the ground that plaintiff could not maintain a common law action for damages, but that his remedy must be sought under the applicable Workmen's Compensation Law, Mason's Minn.St.1927, § 4261 et seq. The lower court expressed the opinion that the Minnesota Workmen's Compensation Act was applicable.

The complaint alleged that plaintiff was employed by the defendant Hanford Tri-State Airlines, to fly as a co-pilot on airplanes carrying United States mail between St. Paul and Minneapolis, Minnesota, and Chicago, Illinois; that while in the course of his employment, on September 2, 1934, he was injured by a crash near Cochran, Wisconsin, due to defective equipment and acts of negligence on behalf of the defendant Hanford Tri-State Airlines. It was alleged that the plaintiff was employed under an oral contract in Sioux City, Iowa, in 1934.

It appears from the testimony that the defendant Hanford Tri-State Airlines had an airplane business in Iowa and was awarded an air mail contract from St. Paul, Minnesota, to Chicago, Illinois. Plaintiff was first employed as a traffic representative at Minneapolis, at which place his duties were defined and his salary agreement consummated. He had a desk and a ticket office in Minneapolis, and his work was confined to Minnesota, except one or two meetings of traffic men in Sioux City. He remained on the payroll of the defendant Tri-State Airlines from the time of that employment. In April, 1934, he made a survey trip of a proposed airline route, after which he was sworn in as an air mail carrier in Minneapolis, and began to work as a co-pilot. St. Paul was the division point, and the planes ridden by him plied between St. Paul and Chicago. Maintenance work was done on the machines at St. Paul, and a dispatcher had an office at that place. The plaintiff resided in Minneapolis, and the defendant Hanford Tri-State Airlines employed in Minnesota some mechanics besides the dispatcher and an alternate dispatcher and the pilots and co-pilots who manned the planes. Plaintiff was definitely assigned to the work as a co-pilot on the planes flying between St. Paul and Chicago, and in the course of his duties went to the St. Paul field every night and there boarded a plane that was waiting for him. Every run he went out on was from St. Paul. In the course of his duties he reported to the first pilot who determined whether the flight should be made. During the course of his employment as co-pilot, and up to the time of the accident, he received no information nor instructions about his duties from any person other than his first pilot of the particular ship he was on. He was given a form of report to fill out, which when filled out he turned

in at St. Paul, when he came back at the end of his run. The pay checks, including plaintiff's, were distributed at the St. Paul hangar. The pilots and co-pilots lived either in St. Paul or Minneapolis. Plaintiff made a trip from St. Paul every other night, with a layover in Chicago before returning of between two and three hours, while his layover in St. Paul was thirty-six hours. There was maintained at St. Paul a list of the assignments of the first pilots. After he began flying between St. Paul and Chicago, he at no time went to Sioux City for any purpose connected with his employment. Most of the pilots' instructions came from the dispatcher or chief pilot at St. Paul, and in the ordinary course of business, instructions respecting duties of defendant's pilots and co-pilots came from a superior employee in St. Paul. After the Chicago run was started, a Mr. Peterson was employed by the defendant Hanford Tri-State Airlines to administer the detail work of the various runs and his headquarters were in St. Paul. The pilots' schedules were made up monthly on a large schedule sheet and kept in the office at St. Paul, where the pilots came to inspect them.

The accident occurred in the State of Wisconsin, and the airplane route between St. Paul and Chicago passed over that state. It was stipulated that "negotiations for employment and the contract of employment were made and entered into in the State of Iowa." The stipulation seems not to have been accepted or relied upon at the trial, as much testimony was produced on the question of how and where plaintiff was employed.

The action was originally brought in the state court but was removed to the federal court on the ground of diversity of citizenship.

It was apparently the theory of the plaintiff that he had been employed in the State of Iowa, where his employer had failed to comply with the provisions of the Workmen's Compensation Act; that by reason of such failure he was at liberty to disregard the provisions of that Act and to maintain an action for common law negligence for the injury received by him in the State of Wisconsin, and that although the action was brought in the State of Minnesota, it was not governed by the law of that state.

■ In our view of the issues, it is not of prime importance to consider the provisions of the Workmen's Compensation Act of the State of Iowa, Code Iowa 1935, § 1361 et seq. Of course, if that Act is applicable, plaintiff could not recover in an action for common law negligence. On this branch of the case, we think it sufficient to say that the effect of the failure of the defendant Hanford Tri-State Airlines to carry workmen's compensation insurance, as required by the Iowa Act, was to give the plaintiff an election to proceed under the Act, or to collect damages at common law. The Act, however, specifically provides that this election must be made in writing filed with the Industrial Commission within sixty days of the injury. Iowa Code, Sec. 1480. Unless such election is made, the law presumes an election by the employee to proceed under the Act. It is conceded here that no such election was made by the plaintiff within sixty days of the injury, nor, indeed, until after the action was brought. If, therefore, we should adopt the theory that the action must be governed by the law of the place where the contract was entered into, it would seem clear that plaintiff could not maintain this action, unless it be on the theory that the Workmen's Compensation Act of Iowa was not applicable because the injury was not received in that state. This question we shall later consider.

■ We do not think it of controlling importance where this contract was made. Ginsburg v. Byers, 171 Minn. 366, 214 N.W. 55. The defendant Hanford Tri-State Airlines operated this branch of its business from St. Paul, Minnesota. From that point plaintiff, in the performance of his duties, rode the plane to Chicago and return, merely passing over the State of Wisconsin, and when plaintiff was employed, it was for work in connection with defendant's fixed place of business in the City of St. Paul. In the words of the Supreme Court of Minnesota, the defendant's business was "localized" in Minnesota. State ex rel. Chambers v. District Court, 139 Minn. 205, 166 N.W. 185, 3 A.L.R. 1347.

It is conceded that plaintiff suffered an accidental injury arising out of and in the course of his employment. The Workmen's Compensation Acts of the various states were enacted for the purpose of requiring industry to bear a part of the burden occasioned by accidental injuries to its employees, when such injuries arose out of and in the course of employment. It is important to determine the location of the industry. If the industry in which plaintiff

was employed was in fact located in Minnesota, he was entitled to the protection of the Minnesota Workmen's Compensation Law, even though his injuries were received in another state, if the work he was doing was a part of the industry being carried on in the State of Minnesota, or was incident thereto. Stansberry v. Monitor Stove Co., 150 Minn. 1, 183 N.W. 977, 20 A.L.R. 316; Bradtmiller v. Liquid Carbonic Co., 173 Minn. 481, 217 N.W. 680; Krekelberg v. Floyd Co., 166 Minn. 149, 207 N.W. 193; State ex rel. Chambers v. District Court, 139 Minn. 205, 166 N.W. 185, 3 A.L.R. 1347; Ginsburg v. Byers, 171 Minn. 366, 214 N.W. 55.

In Bradtmiller v. Liquid Carbonic Co., supra, plaintiff was in the employ of the Liquid Carbonic Company. That company had an office in Minneapolis, though its main place of business was in Chicago. Some property was kept in Minneapolis. Plaintiff was its salesman. He lived in Minneapolis, but his sales territory was in South Dakota. He reported to the Minnesota branch, received his instructions from it, and went under its direction. The court said:

"There is enough to sustain a holding that there was a localization of the business in Minnesota and that the plaintiff was associated wholly with the work done there.

"The facts bring the case within our holding that an employee of a business conducted in Minnesota is entitled to compensation though he works outside."

In Stansberry v. Monitor Stove Co., supra, plaintiff was injured in North Dakota, while the defendant was a Ohio corporation selling furnaces in the Northwest, through a branch office in Minneapolis. Plaintiff was employed by the Minneapolis branch and worked under its direction. The court said:

"For purposes of this case the situation is the same as though the head office instead of a branch were located in Minnesota. The business in which Stansberry was employed had a situs in this state.

"The territory in which Stansberry traveled was for the most part in North Dakota. The business in which he was engaged was localized in this state, and in such a case, our Compensation Act applies and compensates for injuries in a service incident to its conduct, sustained beyond the borders of the state."

We think it clear that the plaintiff was employed in a business or industry localized in Minnesota, and hence his right to compensation for injuries received during his employment must be determined exclusively under the Workmen's Compensation Act of that state. He could not, therefore, maintain a common law action for damages predicated upon negligence. The judgment appealed from is affirmed.